UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SURJIT SINGH,

Petitioner,

v.

UNITED STATES OF AMERICA,

Respondent.

Case No. 3:13-cr-00118-LRH-WGC

ORDER

Petitioner Surjit Singh has filed a pro se petition under 28 U.S.C. §2255 to vacate the plea agreement he entered in December 2014. (ECF No. 66). The United States filed a motion to dismiss Singh's petition as untimely to which Singh did not respond. (ECF No. 70). For the reasons stated below, the Court grants the government's motion to dismiss Singh's petition without leave to amend because any amendment would be futile.

**I. Factual Background and Procedural History**

Singh was charged on an eight-count indictment on December 18, 2013, with multiple counts of possession and distribution of a controlled substance analogue and benefits fraud. (ECF No. 1). Singh, who was co-owner of a Reno-area convenience store, sold synthetic marijuana and psychoactive bath salts out of the store. He also traded the drugs for EBT cards (the primary form in which enrollees in SNAP receive their governmental assistance). Singh and his indicted coconspirator, Jaswinder Singh, would then use the EBT cards to make unrelated personal purchases.

1

Singh pleaded guilty to two of the charges – conspiracy to possess with intent to distribute a controlled substance analogue and conspiracy to commit benefits fraud – on December 11, 2014, with the government dismissing the other six offenses as part of the guilty plea. (ECF No. 37). At his sentencing hearing held on June 1, 2015, the Court sentenced Singh to 30 months incarceration with three years of supervised release to follow. (ECF No. 49). Singh did not appeal his sentence, and he began to serve his term of imprisonment on July 31, 2015. (ECF No. 51). While he was serving his sentence, Singh filed a motion requesting that the Court make a recommendation to the Bureau of Prisons that he be allowed to serve the final year of his sentence in a halfway house. (ECF No. 57). The Court denied Singh's motion. (ECF No. 61). At some point following his motion, Singh was released from prison, but according to him, he was subsequently arrested by Immigration and Customs Enforcement ("ICE") and transported to an immigration facility in Colorado. (ECF No. 66). While at the immigration facility, Singh filed the instant §2255 motion to vacate his guilty plea because his attorney did not sufficiently advise him of the immigration consequences of his plea agreement. (ECF No. 66). Following the filing of his motion, Singh changed his address of record from the immigration facility to a local address in Reno. (ECF No. 67). The government subsequently moved to dismiss Singh's motion as untimely, the issue before the Court today. (ECF No. 70). Singh did not file a response to the government's motion.

**II. Legal Standard**

Pursuant to 28 U.S.C. § 2255, a prisoner may move the court to vacate, set aside, or correct a sentence if "the sentence was imposed in violation of the Constitution or laws of the United States or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."

**III. Discussion**

The United States seeks to dismiss Singh's petition as untimely, arguing that because he filed it more than one year after his conviction became final, it should be dismissed unless he can demonstrate that he meets the requirements of equitable tolling. (ECF No. 70 at 3). The government is correct – Singh's conviction became final on June 23, 2015, because he did not file a direct appeal following his sentencing on June 9, 2015. *U.S. v. Gilbert*, 807 F.3d 1197, 1199 (9th

Cir. 2015) ("the conviction becomes final when the time for filing a direct appeal expires"). Singh, however, filed his instant petition over four years later on September 23, 2019. (ECF No. 66). For Singh's petition to be deemed timely, he must show that he is entitled to equitable tolling. This doctrine requires the petitioner to demonstrate that (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in his way of filing his petition on time. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling is only available when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of [the prisoner's] untimeliness." *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010) (emphasis in original). The standard required to meet the equitable tolling threshold is very high. *Gilbert*, 807 F.3d at 1202.

Singh appears to recognize that his petition is untimely and cites to the applicable equitable tolling legal standard in his petition. (ECF No. 66 at 5–6). But despite citing to the operative law, he does not explain what extraordinary circumstances made it impossible for him to file his petition on time. The government's motion to dismiss should therefore be granted. If a court determines that a petitioner's §2255 petition is untimely, it must give the petitioner an opportunity to show why his untimeliness should be excused before the court dismisses his petition. *Day v. McDonough*, 547 U.S. 198, 210–11 (2006). The Court will not order Singh to make this showing because even if he could demonstrate that he qualifies for equitable tolling, he is not entitled to relief on the merits of his §2255 motion.

In his petition, Singh argues that his attorney provided incorrect advice about the immigration consequences of his guilty plea. (ECF No. 66 at 4). In an addendum to his petition, Singh explains that his attorney told him that he "had nothing to worry about" because the government could not deport him because of his political asylum and status as a legal permanent resident. (ECF No. 68 at 2). He concludes by remarking that despite the Court warning him of the potential immigration consequences during his change of plea hearing, his attorney told him not to worry because his "plea agreement [didn't] mention anything about deportation." (*Id*. at 3).

During plea negotiations, defendants are entitled to the assistance of competent counsel. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). For Singh to demonstrate that he received ineffective

assistance of counsel, he must prove that (1) his counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The "performance" requirement charges the petitioner with demonstrating that his counsel made errors so serious that his attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. He must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The Court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. When doing so, the Court should make every attempt to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. There is a strong presumption that counsel's performance was reasonable and within the appropriate professional standard. *Id*. The ordinary *Strickland* analysis for the prejudice component is inapplicable in this case because petitioner pleaded guilty rather than having been adjudicated guilty following a trial. Thus, to establish the prejudice prong of *Strickland*, petitioner must demonstrate that there is a reasonable probability that but for his counsel's errors, the outcome of the plea-bargaining process would have been different. *Lafler*, 566 U.S. at 164.

The Court finds Singh's arguments and assertions to be unsupported by the record. Singh's plea agreement, which was filed on the public docket, contained the following paragraph addressing the immigration consequences of his guilty plea:

> The defendant understands and acknowledges that if he is not a United States citizen, then it is *highly probable* that he will be *permanently removed* (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if his conviction is for an offense described in 8 U.S.C. §1101(a)(43), he will be deported and removed from the United States and *will not be allowed to return to the United States at any time in the future*. The defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.

4

(ECF No. 38 at 17–18) (emphasis added). This paragraph, along with Singh's responses at his change of plea hearing, contradicts Singh's claim that his attorney told him that the plea agreement "[didn't] mention anything about deportation." (ECF No. 68 at 3). At Singh's December 11, 2014 change of plea hearing, the Court canvassed Singh to ensure that he fully understood the consequences that would result from entering a guilty plea. During that proceeding, Singh acknowledged that he had read the full plea agreement and discussed it with his attorney:

> THE COURT: With regard to the plea agreement in this case, did you have a complete opportunity to fully read it and discuss it before you signed it with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And was your attorney able to answer all questions you may have had about the plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Was it fully explained to you?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you believe that you fully understand the plea agreement?
>
> THE DEFENDANT: Yes.

(ECF No. 62 at 16). Earlier in the canvass, the Court had questioned Singh specifically about the immigration provision within his plea agreement:

> THE COURT: There's also a potential, as I read your plea agreement here, that you may be deported upon completion of your prison sentence and a consequence of that could be that you will never be able to return to the United States. Do you understand [that] could happen as a result of pleading guilty to these offenses?
>
> THE DEFENDANT: Yes.

(ECF No. 62 at 15).

The record in this case is clear – while under oath, Singh confirmed to the Court that he read the entire plea agreement, including the immigration provision, and discussed it fully with his attorney prior to entering a guilty plea. Singh cannot now claim that he was misled by his attorney about the lack of an immigration provision when he himself read the plea agreement and

represented to the Court that he understood that following the completion of his sentence, he would likely be deported. As the Supreme Court has stated, "the subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Singh has not given the Court any reason why it should believe the statements contained within his habeas petition over the sworn statements he made during his change of plea hearing. *See, e.g.*, *Blackledge*, 431 U.S. at 73–74 ("representations of the defendant…constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Shah v. U.S.*, 878 F.2d 1156, 1160 (9th Cir. 1989).

The only other issue for the Court to decide is whether to issue Singh a certificate of appealability. Under the Antiterrorism and Effective Death Penalty Act of 1996, "an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255" unless a district court issues a certificate of appealability based on "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)(B). To obtain a certificate, a habeas petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Allen v. Ornoski*, 435 F.3d 946, 950–51 (9th Cir. 2006). To meet this threshold inquiry, a petitioner must demonstrate that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner], or that the questions are adequate to deserve encouragement to proceed further." *Id.* (quoting *Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000). The Court will not issue a certificate of appealability in this case. Singh has not managed to produce an explanation as to why he repeatedly affirmed that he fully understood the terms his plea agreement during his change of plea hearing when, as he now claims, he did not. No reasonable jurist would find his claims to be credible.

///

///

///

///

///

**IV. Conclusion**

IT IS THEREFORE ORDERED that the government's motion to dismiss (ECF No. 70) petitioner Surjit Singh's 28 U.S.C. §2255 motion is **GRANTED**.

IT IS FURTHER ORDERED that Singh's 28 U.S.C. §2255 motion to vacate his plea agreement (ECF No. 66) is **DISMISSED WITH PREJUDICE**. Singh is denied a certificate of appealability.

IT IS SO ORDERED.

DATED this 5th day of February 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE